Battle, J.
 

 Upon the first question which was presented at'the trial, and which his Honor decided in favor of the defendant, it is unnecessary for us to express any opinion. The inquiry, (if the case required that we should go into it) whether any circumstances would authorise the owner of a ferry to stipulate for a restriction of his liability, as a common carrier, with any person who might come to be transported, would be not less interesting than important. It is easy to see that the
 
 *378
 
 allowance of such an authority might, and probably would be made the means of great imposition upon travellers. On the other hand, there might be many cases, of which the one before us is a striking instance, in which it would seem to be hard not to permit a relaxation of the stern rule of the common law. The elaborate arguments of the counsel have presented in a strong light the difficulties which surround the subject, and prudence, as well as duty, requires that we shall not venture upon a decision until a case shall come before us which imperatively demands it.
 

 From our declining to express any opinion upon the first question, it will be seen that we concur with his Honor upon the second, which is decisive of the case.
 

 Supposing, that under the circumstances in which he was placed, the defendant had a right to enter into an agreement with the plaintiff for restricting his common law liability, it is conceded that he still remained responsible for gross negligence, and the question remains, was he guilty of that? After much reflection, we are of opinion that he was. We cannot well conceive of any good reason why a ferry-boat, used for the transportation of live stock, which is carried across the stream by means of a hawser, should have an iron spike, pin, or bolt, five inches long, standing perpendicularly on the gunwale. It is said that it was an oar-pin, but the case states, expressly, that no oars were used, and as there were no guards to the boat, and nothing else to prevent the horses or mules from being inj ured by the pin, it ought either to have been taken away, or so covered, as to destroy its dangerousness. We do not lay much stress upon the fact that the ferrymen jumped overboard, as it does not distinctly appear whether that was before or after the horse was killed. Our decision is put distinctly upon the ground that it was gross negligence in the defendant to have a boat, in which horses and mules were to be transported, with an iron spike five inches long, so located that there was a reasonable probability of one or more of the animals being injured by it.
 

 Pee CuRiAM, Judgment affirmed.